UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) |
| | ) CRIMINAL CASE NO.: 1:10-CR-194-JEC |
| | ) |
| BRADLEY LOREN KAM | ) |
| | ) |
| Defendant. | ) |

_____

**DEFENDANT BRADLEY KAM'S CORRECTED SENTENCING MEMORANDUM**

Defendant Bradley Loren Kam, through undersigned counsel, files his Corrected Sentencing Memorandum, showing unto the Court as follows:

I. On July 28, 2010, Bradley Kam entered a plea of guilty before this Court to one count of an Information alleging that he possessed with the intent to distribute at least 100 Kilograms of Marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(vii) and 846, a class B felony with a potential exposure of 5-40 years, and a $2,000,000 fine.

II. There are no unresolved guideline issues. Mr. Kam agrees with the USPO that his total offense level is 23, his Criminal History Category is I, his guideline range is 46-57 months and that he is "safety valve" eligible under §5C 1.2(a), allowing the court to sentence under the 60 months mandatory minimum.

III. In the Guilty Plea and Plea Agreement, the government agreed to recommend to the Court the three level adjustment for acceptance of responsibility (p.6), the defendants agree to cooperate (pp 8-9), including

1

filing income tax returns before sentencing[1] and the government will make known to the Court the defendants' cooperation and will assess that cooperation to see if, in its opinion, it qualifies for a motion for substantial assistance or a Rule 35.  In so doing, the government noted that "Good faith efforts by the Defendant that do <u>not</u> substantially assist <u>in the investigation</u> *or* prosecution of another person who has committed a crime" will not result in either motion (p. 13, emphasis supplied).  The defendants also agree to pay any fine or restitution and to pay the $100 assessment per defendant.[2] (pp. 15-16).

**Discussion:**

The case before this Court regarding Bradley Kam and Matthew Gould involves two young men who have been friends since grade school and who in their mid-twenties became involved in the distribution of marijuana.[3]  They are both serious students.  They are both graduates of fine schools. They were both enrolled in Master's programs when they were indicted.[4]   Both defendants admit the use of marijuana from an early age.

Their distribution of marijuana was part time.  Over 64 months they made thirteen buys or about 2.5 buys per year.[5]  They did not carry guns

---

[1] Mr. Kam's tax filings have been recently sent to and acknowledged as received by the government.

[2] Mr. Kam has already paid the $100 assessment.

[3] The third defendant, Mr. Le, was originally their supplier beginning in late 2004 and in mid-2008 worked with Kam and Gould as a partner.

[4] Copies  of Mr. Kam's latest transcript from George Washington University for the 2010 Spring and Fall terms are attached together as Exhibit A.  He has done very well in his graduate work.

[5] 2004 – 1; 2005 – 3;  2006 – 2; 2007 – 1; 2008 – 3; 2009- 3.  This does not count the 2 lb packages Kam and Gould mailed back from California in 2008 (less than six lbs total).

or engage in violence and their co-conspirator did not either to their knowledge. They did not encounter any violence during the time they sold marijuana. What they did was wrong, of course, and they knew it.

Their choice of dealing in marijuana was intentional in the sense that they did not choose to distribute more dangerous drugs such as heroin, methamphetamine or cocaine. Although illegal, marijuana as a drug has been generally treated in a different way by most states during these defendants' lifetime and that of their parents. Those laws appear to be getting more lenient as time goes by. Using and having small amounts of marijuana is usually a misdemeanor and in some places use or possession of small amounts may be a fine. Even though it is illegal, marijuana is a drug about which our country has struggled over many years now to find the right balance, a perception that is widespread.

Now of course, we have "medical marijuana," which has introduced a new outlet for many who it helps medically and is probably used for many who are users or small dealers. Medical marijuana is used for chronic problems ranging from glaucoma to easing the adverse effect of treatments used for cancer and AIDS. Fourteen states and the District of Columbia have now enacted laws that legalize "medical" marijuana and three additional states have the option of legalizing medical marijuana in the November 2010 elections. California has a November proposition to legalize marijuana altogether (posing a federal/state issue).

The use of marijuana is a part of popular media which tends to support marijuana. Movies featuring smokers Harold and Kumar, Showtime's hit show Weeds and a number of rappers and others in the music scene talk of using it. About 83 million Americans admit to having used marijuana, including our current President. The offense here is not simple possession or "using," but marijuana does have a background that tends to separate it from harsher drugs.

*The 3553 Factors*

*The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.*

> *(a) (1) The nature and circumstances of the offense and the history and characteristics of the defendant.*
>
> The guidelines for 1300 plus pounds of marijuana are high to the extent that this would be a mandatory minimum sentence but for the safety valve factors.  Defendant Kam's history and characteristics outside of this offense are exemplary.  His criminal history category is I.  He was a good student in school and is clearly a serious student in his choice of study (world politics and conflict resolution)[6] and he has no juvenile or adult arrests other than this case.  He has accepted responsibility according to the USPO in this case.
>
> *(2) The need for the sentence imposed*
>
> This paragraph is instructive in this case.  Bradley Kam's background and intelligence suggests that this defendant will not likely be a recidivist.  He is intelligent, hard working and has good family support.  He will do well in life once he can get past the punishment he will face from his sentence.  He will be punished far beyond his sentence in terms of being excluded from the type of political/cultural work he was seeking, as noted by his father's letter to the court.  Even today, he has volunteered in a refugee volunteer after school program.  It is

---

[6]  Recently, Mr. Kam has been volunteering at the Refugee Family Services of Atlanta in Stone Mountain, Georgia.  The program focuses on children who are recent refugees that have been settled in the Atlanta area.  Mr. Kam helps children with homework as well as socialization.  He goes 1-2 times a week.

hard to measure the deterrence impact of a sentence, but Bradley Kam's sentence will immediately foreclose the possibility of working in a career involving public service.

The public need not fear him. There is no violence in his background. His father describes him as "the peacemaker, the moderator, and the person his classmates, friends and peers came to for advice in resolving their disputes." A childhood friend, Dr. Chris Johnson, pointed to the same trait in his letter about Brad. Brad and his family were also wise enough to seek professional help as Dr. Carpenter's letter demonstrates. Similarly, educational or vocational training, other than counseling, may improve his life, but is not likely to be necessary to rehabilitate Bradley Kam.

Brad's history and characteristics do not equate with the offense that he has committed. This is not an offense with violence or sexual issues that can follow a person over many years. He should have an opportunity to demonstrate that he can stay within the law in terms of putting aside any intention of ever selling an illegal drug again.

What may be more difficult is escaping his addiction to marijuana use or a general propensity to addiction. A sentence that includes drug counseling would make sense, including a recommendation to the BOP to consider Mr. Kam for the RDAP program.

Brad's lesson is probably not fully digested, but it is likely already learned. By the same token, respect for the law and just punishment sometimes comes not from the harshest sentence behind a fence, but from one tailored to supervision

from which a defendant can learn and apply himself in a positive and productive way in his community.  Bradley will be a good candidate for community service after whatever period of incarceration he must serve.

*3) The kinds of sentences available*:

Counsel and certainly his family and the defendant hope that the Court will consider a shortened sentence of incarceration and a period of public service or working with a non-profit that could translate into community service hours.  This defendant would be good at it and is capable of helping his community at the same time.  We know he is intelligent.  He is certainly smart enough not to recidivate.  As in all cases, he will have a chance to prove himself.  We also know he has good family support.  It should not take a substantial period of time in a prison camp to make the point.  There may be many factors that influence a young man to turn to acting outside of the law.  One factor may be what his mother notes in her letter --  Bradley did believe that the financial support for his education was threatened due to their divorce.  He needed to find a way to supplement his income and he obviously made a wrong turn in his choice.

**A  Fine**

The PSR makes it clear that the real estate corporation owned by Mr. Kam and Mr. Gould is under water.  The government has determined not to proceed against it in a civil suit.  Brad Kam has virtually no money and has credit card debts.  Although he has already filed his back taxes, he owes a substantial amount of money to the IRS which will grow with interest during incarceration.  We request that any fine be waived.

**The Argument For a Variance**

When asked, the government responded on <u>Friday, October 15th</u>, that they would not be filing a substantial assistance motion because they are through with this case. In his argument for Mr. Gould, Mr. Kirschenbaum's makes an argument for a variance. Mr. Kam supports that argument. Rather than repeat the legal arguments made by Mr. Kirschenbaum, our argument is factual.

We pose a two part question. First, does not the government have a responsibility to be in good faith with respect to the language used in the plea agreement? Just as the government takes the defendant's Plea Agreement seriously regarding his obligations to the government (for which there are penalties if he does not comply), there should be a formal obligation on the government's part to give a serious response as to whether substantial assistance has been rendered "in the <u>investigation or prosecution</u> of another person who has committed a crime" (Guilty Plea and Plea Agreement, p 13), even if, as in this case, the government chooses not to recommend a downward departure because they do not want to expend additional time on this case.

Second, the government's response should, at least, include a rationale, *i.e.*, an analysis of what information the defendant provided to the government, perhaps similar to what it might send to the probation office in a report on the defendant on a serious failure to comply.

**Bradley Kam's Substantial Assistance**[7]

The government warned both Mr. Kam and Mr. Gould before they met with agents that any deceit or false information would nullify any substantial assistance for them. We can only presume that they followed the same protocol for Mr. Le  It is a given that Mr. Le did not tell the agents the whole truth on his first interview without an attorney or in his second interview with an attorney. In his initial interview of 12/06/2009, "LE stated that for the past four years, he worked for a marijuana trafficking organization that was run by Brad Kam and Matt LNU," later identified as Matt Gould. Not true. Kam and Gould learned of Le because he was selling marijuana to a friend of theirs who was getting out of the business and the friend charged them $10,000 to get access to Le as a supplier. At the earliest, that was late 2004. Le told the agents that he worked for Kam and Gould. In reality, Le was a supplier to Kam and Gould and to others and told Kam --after Kam had bought from him over time-- that he had been a supplier of marijuana for 15-20 years and sold tens of thousands of pounds of marijuana over that period. (Le is believed to be approximately 10-12 years older than Kam and Gould.)

It is true that after Le lost his source, Kam, Gould and Le cooperated in looking for a new source and ultimately Kam and Gould found one in California. They then became partners with the new source meaning that they shared profits and expenses, somewhere around mid 2008,

---

[7] The **Plea Agreement** states the government's obligation in the negative: "Good faith efforts by the Defendant that do **not** substantially assist in the investigation **or** prosecution of another person who has committed a crime will not result in either a motion for downward departure or a Rule 35 motion." Plea Agreement, p. 13.

After the interview of Gould and Kam (who related to the government facts about the relationship between Le and themselves, *i.e.,* he was their supplier for about 4 years and that part of Le's family was also involved), the government then brought Le back for a third interview to ask him to explain the role of his family which he had apparently failed to mention.  On the third interview, Le admitted that his brother Tan Le was involved in transporting marijuana as Kam and Gould had asserted.  Mr. Kam and Mr. Gould would both testify to the same facts as defendant Trung Le.  The government will also acknowledge that this is true.  There is also additional information that Kam and Gould have supplied about another brother, Tam Le, as noted below in a list of Mr. Kam's assistance to the government.

That information was "substantial assistance" in the "investigation" provided by Gould and Kam in their first interviews as 1) they related the true history of their relationship with Le as well as their later partnership in California and Oklahoma and 2) the disclosure regarding the assistance from Trung Le's family and especially Le's brother Tan Le and participation by brother Tam Le.  In short, they substantially assisted in the investigation of a person(s) who committed a crime, exactly to the letter of what the government said it required for substantial assistance.

It is also an easy prosecution should the government so choose since Trung Le, Bradley Kam and Mathew Gould can all testify about the participation of Tan Le.  Tan Le received about $75,000 to transport 250 pounds of marijuana back to Atlanta, the largest buy that Kam and Gould ever made (assisted by Trung Le).  Apparently, Tan Le was also the only person to make money on that purchase since that was the buy in which Gould had about $270,000 seized by the Utah State Patrol which Kam, Gould and Trunh Le had to repay.

So, the only thing stopping a 5K1.1 for Mr. Kam "in the investigation of another person who committed a crime" is the unwillingness of the government to reward the truthfulness of Mr. Kam and Mr. Gould.  They argue there must be a 'prosecution' which the government is not willing to do even though Kam and Gould complied with the letter of the Plea Agreement.  Although the plea agreement provides for the possibility of a Rule 35 motion, it is clear at this point that a Rule 35 is also not being considered by the government, but they are willing to turn it over to DeKalb County.  Unfortunately, there is no indication whatsoever that DeKalb County will take a case that has been thoroughly investigated by the federal government since December of 2009 and would be much easier for the USAO to do.[8]

In supporting this position, the Criminal Chief rationalized that Judge Carnes would be happy to hear they are not pursuing the case because she is too busy with too few judges already and will be glad to know that she does not have to deal with another case regarding these defendants.  There is no doubt in this writer's mind that Chief Judge Carnes works long hours and has way too much do, but it is a strange rationale for the U.S. Attorney's office to suggest one of the reasons they are not prosecuting a defendant in a federal drug conspiracy because it would inconvenience a judge.  No doubt, it would inconvenience the

---

[8] We have been in touch with the same DeKalb authorities on other matters in this case on which they would not even respond to our letters.

USPO also, not to mention the U.S. Attorney's Office which apparently feels the most inconvenience.  The fact is, however, that there are three witnesses that know of and would testify against Tan Le and his assistance in transporting  250 pounds of marijuana for what we understand to be $75,000 – his brother Trung Le, Mr. Kam and Mr. Gould.  It is a very simple case and a likely plea of guilty.  Perhaps more important, the letter of the plea agreement does not require assistance in a prosecution, but only assistance in the investigation.

**Summary of Assistance**

In addition to that noted above, Mr. Kam has helped the government as follows:

--Kam would testify that both Tony (Trung) Le and Tan Le told Kam that Tan Le received drug profits that <u>Tam</u> Le invested in his real estate company, Sea Queen Properties, his stock account and his restaurant (Big Tuna Seafood).

 --Kam would testify that he witnessed defendant Trung Le sell marijuana at Big Tuna Seafood restaurant while <u>Tam</u> Le was present and that Trung Le stored marijuana at <u>Tam</u> Le's property on Cindy Lane.  Moreover, a third party known to Kam would say that he (third party) purchased marijuana at Big Tuna Seafood owned by <u>Tam</u> Le.

--Kam provided information about "Marcello," a cousin of defendant Mendoza (the fugitive in this case).  <u>Marcello</u> was the principal supplier from California and believed to be a large supplier across the country.  Kam says he lives in Modesto, California.  It is unclear whether or not the government followed up on that information.

--Kam says that Le told him that he imported from suppliers in Houston, Los Angeles, Chicago and northern New Jersey. The New Jersey connection was importing from Toronto where Tony said that he took flights to meet with the Canadian supplier.

--On information and belief, Kam says that Trung Le and Tan Le have significant information about major traffickers in the Atlanta area as well as across the country. Kam also believes that if Tan Le were indicted for driving marijuana to Atlanta, that he would likely cooperate and give information about Trung and about <u>Tam's</u> own involvement in money laundering. <u>Tam</u> is believed to have substantial assets..

--Kam knows that Tan Le was driving the second car with $120,000 in it when Mr. Gould was stopped by the highway patrol in Utah.

Tan Le told Kam that Tan Le gave nearly all the money he received for transporting the 250 pounds to Atlanta to <u>Tam Le</u> to invest for him.

--Kam also provided an alias and a cell phone number for the person known as "Thai" who was a significant financial investor for Kam and Gould. The agents seemed particularly interested in Thai.

**Conclusion**

First offenders who commit federal drug crimes are difficult cases for attorneys with regard to sentencing. It is still something of a mystery as to why we incarcerate for longer periods than most other countries and we know that drug offenders represent a substantial part of the prison population. Of course, the court can do nothing about certain disadvantages Mr. Kam will face regarding jobs that will no longer be open to him. He is likely to serve whatever sentence the court imposes without difficulty in the sense that he will follow the rules. He is likely to become a law abiding citizen, have a career and his own family if he so chooses.

The "need for the sentence imposed" may be the most difficult provision. It may be that some period of incarceration serves a purpose in terms of punishment and may help in deterrence, although that is difficult to measure. Hopefully, the Congress will pass a new §5C1.3 guideline that will allow possible probation for some first offenders, a change that may be in line with the view that appears to be changing for marijuana offenders.

Counsel submits that the shortest period of incarceration possible should be considered for Mr. Kam with drug counseling in the RDAP program and perhaps thereafter, as well as community service for some period of time.

Mr. Kam would like the Court to request that the BOP place him at Maxwell AFB in Montgomery, Alabama if possible.

Respectfully submitted,

s/C. Michael Abbott
C. Michael Abbott
Georgia State Bar No.: 000 250

C. Michael Abbott, P.C.
3127 Maple Drive, N.E.
Atlanta, GA 30305-2503
Tel.: 404 262 6510
Fax: 404 261 2842
E: michael@michaelabbottlaw.com
C. Michael Abbott P.C.

## CERTIFICATE OF SERVICE

      I certify that on October 17, 2010, I filed the foregoing Defendant Bradley Kam's <u>Corrected Sentencing Memorandum</u> with the United States District Court for the Northern District of Georgia by the CM/ECF system that will deliver this filing to the attorneys listed below:

Seth Kirschenbaum
Attorney for Matthew Gould
Seth@DZKL.com

Frank Derrickson
Attorney for Trung Le
fderrickson@comcast.net

 

                                               <u>s/ C. Michael Abbott</u>
                                               C. Michael Abbott